We'll hear the first case on calendar. I see counsel present. Good morning. Morning, Your Honor. It may please the court. My name is J off Seavage and I am here on behalf of the defendant appellant Jonathan Fernandez. I've raised three points in the appellant's brief this morning. I want to focus on abetting and witness tampering. First, the evidence was insufficient to prove beyond a reasonable doubt that Mr Fernandez aided in betting and witness tampering. Mindy Stevens and Andre Konopsky devised a plan to try and influence William Wagner's testimony. The plan involves sending documents obtained by Stevens to 25 random prisoners at the Green Correctional facility where Wagner was incarcerated to show that Wagner was cooperating with the authorities. When asked during a jailhouse conversation, Mr Fernandez consented to the plan. This was not enough to show that he aided and abetted in this crime. In order to find that Mr Fernandez aided or abetted the witness tampering charge, the government was prior to show beyond a reasonable doubt that Mr Fernandez knowingly associated himself with the Isn't this a situation where he was asked to give a green light or a red light and he said, do it? Yes, he did. But as we know from Rosemond, we need to show that he intended for this offense to take place. And the offense that he wanted to take place involves sending the letters to the Green Correctional facility. This was actually not the plan that was undertaken. The Stevens, Konopsky and Mr Fernandez's father met with Wagner's mother and and uh, to try and influence them. There was no evidence introduced by the government that materials ever mailed to the Green Correctional facility. The evidence does not show that Mr Fernandez would have agreed with the plan that was undertaken by Stevens and Konopsky. If they presented this plan to him and he agreed, we'd be in a different situation. However, uh, the plan changed completely. Didn't the defendant speak to Mr Wagner? I think part even to the indictment and try to get him to adjust his story. Uh, not to my knowledge, Your Honor. My understanding of all the communications had really had taken place between, uh, Stevens and Konopsky and his father with the aunt and mother in Rosemont. The judgment was vacated because the appellant did not know that his confederates were going to use a firearm here. Mr Fernandez did not know that his sister and brother in law were going to approach Wagner's aunt and mother. Very different plan from what was undertaken. Lack of knowledge of this plan shows his lack of intent. Thus, we believe that the conviction for the witness tampering should be vacated. We also request that the 20, the 240 month sentence for aiding and betting. If you do not agree with us on that, the conviction for the witness tampering should be vacated. We believe that the, uh, 240 month sentence for witness tampering is both procedurally and procedurally. So the guideline for the witness tampering itself, 240 months, uh, as a group, as a separate group because of the reference to the adjustment of the grouping. Yes. So that was a guideline to for, for just that, I think it was a count 13 or 14, 14, 14, right? Yes. So it was a guideline range sentence for that. Yes. Which was a statutory maximum sentence for that offense. And there was a statutory maximum. It was imposed for all 11 counts of conviction. It wasn't just for the witness. No, it was for all counts of conviction, your honor. But we need, we need to consider what's the benefit? You're not challenging the other counts in this appeal. So what if we agree with you? What's the benefit to your client? The benefit may months notwithstanding that count that actually falls into, uh, the government's argument that this is just an academic exercise, which we disagree with. As we know, uh, we see changes take place in, in the sentencing guidelines that are applied retroactively. We see changes in the law that are applied retroactively. Amendment 782 to the United States Sentencing Guidelines is an example of this, where the base offense levels for the drug trafficking charges have changed and clients have been resentenced. If this were to have a guideline sentence, right? Ultimately, this was a non guideline sentence, but we arranged it was departed from to reach the 240 months. Uh, roughly came to roughly 440 years. So what's dropped down? Any change in any of those? We don't know what's going to happen four years from now, eight years from now, 12 years from now. However, if we don't act proactively, we know that Mr Fernandez could be harmed if there are changes that could benefit him. So we need to address this now and look at this issue because he can possibly benefit. We're not saying that this is going to occur right now. We don't know what the future may hold, but we do need to to act proactively on this. As far as the procedural and reasonableness of the sentence, uh, the particular sentence, the statement must explain why the considerations user justifications for the sentence are sufficiently compelling or present to the degree necessary to support the sentence imposed. The court's explanation does not meet these requirements. The court gave the following an explanation for sentencing Mr Fernandez to 240 months in prison for witness tampering by saying the witness tampering, that is conduct where you did, as far as I'm concerned, engage in threatening behavior where you were at least complicit, if not directly involved in threatening conduct, threatening violence, threatening harm towards individuals so that they would not come into this courtroom and testify truthfully. And that undermines the entire system of justice, the system of justice that you were relying on in the system of justice that a number of defendants rely on. The court's conclusion was that he was at least complicit. That is, he was involved in. And if the court does not agree that the conviction should be vacated, well, he was involved in that, but the evidence does not show him to be actively involved, uh, to be actively engaged in the conduct that was Stevens and Konopsky. They were the ones who devised the plan. They were the ones who researched out Wagner's, uh, involvement with the government. They're the ones who changed the plan from what they originally told Mr Fernandez they wanted to do. While a statement court statement might be sufficient to explain why the court was sentencing Mr Fernandez, it's not sufficient to explain why it gave 240 months imprisonment. And I've, unless you have further questions, I have forfeiture then. Yes, Your Honor. So you claim the forfeiture was wrong as well. 13 weapons, including that nine millimeter rifle, right? Because they were just for in other sporting purposes. Yes, Your Honor. Target shooting. Yes. So as to the nine millimeter rifle, as I understand it, he was tipped off, I think, by his father that the search was gonna occur on December 19th. He'd heard that there was a search taking place. Yes. And so he ran out of the house with another party and he grabbed the nine millimeter rifle. Yes, Your Honor. Loaded. Correct, Your Honor. And then on December 30th for the second search, that's when they found the nine millimeter rifle. Yes, Your Honor. So it wasn't a fair conclusion for the trial court to draw that perhaps he didn't remove the nine millimeter rifle on December 19th to use it for target shooting sometime later that maybe it was occasioned by the in that case, there may be the argument that that particular gun was not used just for sporting purposes. But we do have evidence testimony in the case that a lot of firearms were in fact used for sporting purposes. Well, nine of them that were in the bedroom in the house. Yeah. Well, yeah, that's how that's how that's how he kept his weapons. Yes. Like that. Lord, if you're just for target shooting, Your Honor, I don't keep weapons myself. Other people have different ways that they do that, that they keep their weapons, store their weapons, use their weapons in his household. He allowed his friends to go in the property and hunt, and he was very free about that. And people could come and go as they pleased and take those weapons. Uh, there was questions about the shotgun. 22 is that we're loaded to write 22 caliber weapons. Those are those are used for skeet shooting, right? No, but they're used for other sporting purposes. Your Honor. Thank you. They may be used for sporting purposes, but three of them were near the workbench with manufacturing going on. Nine of them were in his bedroom where he did packaging of this stuff, and one of them was was a rifle on the coffee table of his living room, which is unusual, which but the weapons in this household, that's this is how he kept his weapons, and he was he freely allowed people to use them. The interesting thing is greeted people at the door with a weapon on occasion, didn't only one person testified to that. Other individuals who testified said they were never greeted at the door with it. And in fact, the informant who went in the cooperator who went in with the camera and who had spoken about the gun at the desk, he entered the house on his own. No one answered the door. He walked through the house. He could have gotten any weapons he wanted. He was never threatened or approached with a weapon, and the weapons were around for him to use if he so desired. And that's the way things were done in this household. You've reserved some rebuttal. We'll hear you then. Thank you, Your Honor. May it please the court. Monica Richards on behalf of the government on this appeal. The aspect of the case that was asked last about the guns in the forfeiture here. I think it's sort of an academic discussion anyway, because we do have somebody who's now convicted felon, and so he wouldn't be entitled to those guns anyway. If there was somebody who had a rightful claim to his wallet, right? Right, which if somebody had a rightful claim to them, a lawful claim to them, then they could make that claim in the forfeiture proceeding. But here, where the judge referred to the cash in its entirety, the impressive array of guns is displayed in the bedroom, plus the three that were in the garage, setting aside the one that was found on the last day. I think that one's the easiest. But with regard to the ones that were found in the bedroom, it was the fact that they were displayed behind the bed in the exact same room where he was manufacturing and selling, that the judge focused on, that it was the cash in its entirety. Some were loaded, some were not loaded. But nobody knew that walking into the room, which ones were loaded and which ones weren't. So to that effect, I would say two ways, that that's academic, and it's also the district court did the right thing here with regard to how it decided this. The case regarding the aiding and abetting, here we were also charged under section two of the statute, so that we also had an attempt. Whether or not the specific plan is what was carried out, as they discussed on the phone, is irrelevant to the discussion. As far as the proof went in at trial, there was definite conversations that were recorded, there was definite and intelligent responses. In fact, working around, the defendant came up with a way to work around the prison's mailing rules, so that they could mail things to him under... As lawyers mail, legal mail. So here to say that the specific plan or whatever it was they tried to do in the end, isn't exactly what they discussed on the phone, doesn't matter. The intention to interfere with the witness and his testimony was clear. As Your Honor noted, Judge Jacobs, the question regarding whether or not there were reported phone calls, I believe it's in the record at pages about 118, 119, where Mr. Wagner testified that he was told that the defendant was going to say he was out of town and he'd rented the house to somebody else. And then after that, Wagner was arrested and agreed to cooperate. Was there contact with someone named Ayers? There was also that aspect of the testimony, I happened to find what the court... What I thought the court was referring to regarding Mr. Wagner. But when it came down to the sentencing, frankly, that wasn't part of the discussion of the sentencing regarding aiding and abetting related to these phone calls specifically. Further, with regard to the reasonableness of the sentence, I think the court has properly focused on the fact that this wasn't an independent sentence with regard to the aiding and abetting, that it was a grouping, it was as a result of the grouping and the guidelines were 240 for that specific count. And I think my counsel might have misspoken, if this case were to come back later for some problem with regard to the drug and gun aspect, with regard to the drug aspect of the case, if it were, then the calculus, the sentencing calculus would be undone. That's something that's court said in numerous other cases. Sorry, I don't have one at the tip of my tongue, but were this grouping calculus affected because one count or the first 13 counts went away or the first number of counts, I had that number wrong, then 10, thank you, then this whole calculus would be re-examined and then that guideline range for the specific, for the aiding and abetting, would necessarily likely be different were the first 10 gone. Am I right that the calculation on the guidelines was life, but it was just reduced because of the statutory caps on the counts of conviction? I'm not sure that's exactly right. The judge calculated as one that, let me just think, it was actually stacked so that we ended up with something like 1,140 months, I think my co-counsel gave us 40 years, which I didn't disagree with, so that the sentencing calculus, in order to reach that, pursuant to the guideline, the judge then looked at the statutory maximum, but with regard to the drug counts, so that when it came down to the 240, it was a below guideline sentence and also below the statutory maximum for the guns. I'm sorry, I'm so sorry, for the drugs. The PSR said that with offense level 43, criminal history 2, the guideline range is life, and then says it's lower, though, because of the statutory maximums. But then it was the stacking in order to reach the, I'm sorry for the confusion, then it was the grouping, so they were stacked. I'm sorry. Unless there's any further questions, I'll rest on my brief. Thank you. We'll hear rebuttal. Thank you, Your Honor. Very briefly, just as the Court noted, in response to the government's view that this is an academic discussion regarding the forfeiture of the firearms, Mr. Fernandez would like to have them given to his mother so that she can dispose of those firearms that he is entitled to. There is no nexus between all of the firearms and the narcotics conviction. While there may be an argument that there's a nexus between a couple of the firearms and the narcotics conviction, it doesn't apply to every one of the firearms. As to the aiding and abetting charge, Rosemont should not be read so narrowly as to preclude its application in this case. Unless there's any further question, I will rest on my brief. Thank you. Thank you both. We'll reserve decision.